UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
RUSSELL CARBONE,

Plaintiff,

**REPORT AND RECOMMENDATION**
CV 24–8789 (GRB)(AYS)

-against-

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

Defendant.
--------------------------------------------------X
**SHIELDS, Magistrate Judge,**

Plaintiff Russell Carbone ("Carbone" or "Plaintiff"), commenced this action against United States Department of Housing and Urban Development ("HUD" of "Defendant"), challenging the validity of HUD's mortgage upon the premises and real property located at 56 Sammis Avenue Deer Park, New York (the "Subject Property").

Presently before this Court, upon referral by the Honorable Gary R. Brown for Report and Recommendation, is Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (See Order Referring Motions dated 01/27/2025 and Motion dated 02/06/26 at Docket Entry ("DE") [27].) As discussed below, this Court respectfully recommends that Defendant's motion be granted.

## BACKGROUND

### I. Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Amended Complaint, though disputed by Defendant, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Moreover. "[a] court may take judicial notice of documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

The Court turns now to discuss the facts set forth in Plaintiff's Amended Complaint, construed in their favor.

## II. Facts

### A. Background

#### 1. HUD's Reverse Mortgage Program

In 1988, Congress enacted HUD's Home Equity Conversion Mortgage ("HECM") program to mitigate the "special needs of elderly homeowners by reducing the effect of . . . increasing costs of . . . health, housing, and subsistence needs at a time of reduced income" through the provision of reverse mortgages. 12 U.S.C. § 1715z-20(a)(1). Borrowers who are age 62 or older can use HECM loans offered by private, HUD-insured lenders "to convert their

accrued home equity into liquid assets while remaining in their home." Esquivel v. Fudge, No. 22-CV-0556-L, 2023 WL 5658338, at *1 (N.D. Tex. Aug. 31, 2023) citing 12 U.S.C. § 1715z-20(a). In return for a first lien on the home as collateral, the borrower may receive a lump sum, monthly payments, and/or access to a line of credit. 12 U.S.C. § 1715z-20(b)(3), (b)(5), (c) (requiring borrower to grant first lien to lender), (d)(9) (payment provisions to borrower; 24 C.F.R. §§ 206.3 (definition of mortgage), 206.19 (payment options). Although interest accrues throughout the life of the loan, the borrower does not make any repayments on the loan until a "triggering" event occurs to cause the loan to become "due and payable." 12 U.S.C. 1715z-20(j); 24 C.F.R. § 206.27(c); Plunkett v. Castro, 67 F. Supp. 3d 1, 6 (D.D.C. 2014) (describing the mechanics of the HECM loans). The triggering events causing the loan to become due and payable include, inter alia, the death of the borrower, the sale of the home, or the borrower no longer using the home as a primary residence. 12 U.S.C. 1715(z)-20(j); 24 C.F.R. § 206.27(c).

HUD incentivizes private lenders to originate HECM loans by offering insurance to offset any financial loss incurred when the loan becomes due and payable. 24 C.F.R. §§ 206.15, 206.123, 206.129(d) (authorizing lender to file claim for outstanding balance of loan, accrued interest and certain costs incurred). In consideration for HUD insurance, the lender remits a mortgage insurance premium to HUD. 24 C.F.R. § 206.103. HUD offers HECM lenders two options to mitigate any losses associated with these loans. Provided certain conditions are met, the lender may either elect to assign he mortgage and note to HUD once the borrower has drawn 98% of the maximum claim amount, or the lender may elect to hold the loan until it becomes due and payable, and then file an insurance claim. 24 C.F.R. §§ 206.27(c), 206.107(a), 206.123, 206.130. When a loan that the lender elected to retain becomes due and payable, the lender will foreclose on the property and, if the lender acquires title through foreclosure, convey title to the

property to HUD. 24 C.F.R. §§ 203.123, 203.125, 203.127. Depending on which option is elected, HUD will sell either the title to the foreclosed real property or the note in order to mitigate the loss to HUD's Mutual Mortgage Insurance Fund. 24 C.F.R. Part 291. Following a triggering event, there will be a deferral period, after which the mortgagee will foreclose unless the borrower repays the amount due under the loan or conveys title of the property to the mortgagee. 24 C.F.R. § 206.27(c)91).

2. HUD's Mortgage Against the Subject Property

On July 6, 2009, the Victors, who owned the Subject Property as tenants by the entirety, executed a HECM mortgage in favor of Continental Homes, LLC ("Continental") in the amount of $562,000. The mortgage was recorded with the Suffolk County Clerk on November 9, 2009 at Liber M00021879, Page 997. (Mortgage from Emmanuel Victor and Carmel Victor to Continental, dated July 6, 2009 (the "Mortgage"), certified by Suffolk County Clerk Vincent Puleo on March 28, 2025, Declaration of Mary M. Dickman dated September 12, 2025 ("Dickman Decl."), Ex. 1, DE [27-4]; Am. Compl., Ex. B, DE [17], pp 17-26; Am. Compl. p. 3.)

On that same day, June 6, 2009, the Victors executed a Note, insured by HUD, in favor of Continental and its successors and assigns, in which they promised to repay any loan advances made to them pursuant to the Note at an interest rate of 5.56 percent per annum. (Declaration of William Collins, dated January 23, 2025 ("Collins Decl."), Ex. B ("Note"), DE [13-2] at pp. 14-19.)

Also on June 6, 2009, Continental executed an assignment of the Mortgage to Financial Freedom Acquisition, LLC ("Financial Freedom"). This assignment was recorded with the Suffolk County Clerk on November 9, 2009 at Liber M00021879, Page 999. (Collins Decl., Ex. C ("First Mortgage Assignment"). DE [13-2] at pp 20-24; Am. Compl. p. 4; Am. Compl., Ex. C

at pp 30-32.) Continental also indorsed the Note to Financial Freedom through an allonge, which is attached to the Note. (Collins Decl., Ex. B ("Allonge of Note") at p. 18.)

On April 19, 2011, Financial Freedom executed an assignment of the Mortgage to Mortgage Electronics Registration Systems, Inc. ("MERS"), as nominee for Financial Freedom. This assignment was recorded with the Suffolk County Clerk on May 16, 2011, at Liber M00022077, Page 425. (Collins Decl., Ex. D ("Second Mortgage Assignment"), at pp.25-29; Am. Compl., Ex. D at pp. 35-39; Am. Compl. pp 4-6.) Because Financial Freedom assigned the Note to MERS as Nominee for Financial Freedom, but maintained beneficial ownership for itself, Financial Freedom retained ownership of the Note and did not indorse or otherwise deliver it to MERS.

On August 12, 2014, MERS, as Nominee for Financial Freedom, executed an assignment of the Mortgage to HUD, which was recorded with the Suffolk County Clerk on March 17, 2015, at Liber M00022574, Page 782. (Collins Decl., Ex. E ("Third Mortgage Assignment"), at pp. 30-33); Am. Compl., Ex. E at pp 42-44; Am. Compl. at pp. 4-6.) The assignment was executed on behalf of MERS as Nominee for Financial Freedom. (Id.) Pursuant to the Third Mortgage Assignment, Financial Freedom transferred the Note to HUD through an indorsement on the signature page of the Note. (Collins Decl., Ex. B at p. 17.)

HUD's files also contain an additional document referencing the Note. (Collins Decl., Ex. B at p. 19.) This document labelled "Allonge," bears the signature of a Vice President of Bank of America, N.A. ("Bank of America"). There is an additional special indorsement from Financial Freedom to Bank of America on the reverse side of the signature page to the Note. (Declaration of Desrai Blanton, dated January 30, 2026 ("Blanton Decl."), DE [29-1] ¶¶ 10-12.)

Carmel Victor died on May 15, 2021, having been preceded in death by her husband, Emmanual Victor. On March 18, 2024, Lionel Victor, as Administrator of the Estate of Carmel Victor, executed a deed granting the Estate's ownership interest in the Subject Property to Plaintiff, in consideration of a payment in the amount of $20,000.00 (Am. Compl., Ex. A Deed from Lionel Victor as Administrator of Estate of Carmel Victor to Plaintiff, dated March 18, 2024 ("Deed"); Am. Compl. pp 1-3.) The Deed was recorded with the Suffolk County Clerk on March 19, 2024, at Liber D00013249, Page 564. (Id.)

The Debt memorialized by the Note and secured by the Mortgage remains unsatisfied. (Collins Decl. at ¶ 19.) As of December 13, 2024, the amount due and owing to HUD is $775,337.45, consisting of an unpaid principal balance in the amount of $327,489.34; interest in the amount of $398,960.33; servicing charges in the amount of $5,550.00; and a mortgage insurance premium in the amount of $43,377.78. (Id.)

The Amended Complaint asserts that the HUD mortgage should be expunged based upon two separate theories. Plaintiff contends that the HUD mortgage must be cancelled or discharged pursuant to New York Real Property and Actions Proceedings Law ("N.Y. R.P.A.P.L") § 1501(4) ("Section 1501(4)") because HUD has not commenced a foreclosure action within New York's six-year statute of limitations period. Defendant argues that this claim must be dismissed pursuant to Rule 12(b0(6) because in the Second Circuit, Section 1501(4) cannot be invoked to cancel a mortgage held by the United States or its constituent agencies.

Plaintiff's second theory is that the HUD mortgage must be found to be invalid based upon alleged flaws in the series of assignments that ultimately conveyed ownership of the mortgage to HUD. Plaintiff essentially seeks to quiet title in the Subject Property. Defendant asserts that the claim should be dismissed pursuant to the Rule 12(b)(1) because Plaintiff lacks

standing to argue this, as he is neither the holder of the HUD mortgage nor the holder of the note establishing the debt that is secured by the HUD mortgage. Defendant also argues that Plaintiff's quiet title claim must be dismissed pursuant to Rule 12(b)(6) because Plaintiff has failed to plausibly allege that any of the series of assignments of mortgage was invalid.

B. Procedural History

Plaintiff commenced this action on November 26, 2024 in the Supreme Court of the State of New York County of Suffolk. (See generally Compl., DE [1-1]) On December 24, 2024, Defendant removed the case to this Court. (DE [1].) Defendant then requested a pre-motion conference for leave to move to dismiss the Complaint. (DE [13].) On January 27, 2025, the pre-motion conference request, as well as any dispositive pretrial motions, were referred to the undersigned. (Order Referring Motions dated 01/27/2025.)

On February 5, 2025, an initial conference was held and Plaintiff was granted leave to file an amended complaint. (DE [15].) Plaintiff filed the Amended Complaint on February 24, 2025. (DE [17].) On March 10, 2025, Defendant once again requested a pre-motion conference for leave to move to dismiss the Amended Complaint. (DE [18].) On July 28, 2025, the undersigned waived the pre-motion conference and issued a briefing schedule. (Order date 07/28/2025.) Following a series of extensions of time to file the motion, the fully briefed motion was filed on February 6, 2026. (DE [27].)

III. The Motion to Dismiss

Defendant seeks dismissal of the Complaint pursuant to rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

The Amended Complaint asserts that the HUD mortgage should be expunged based upon two separate theories. Plaintiff contends that the HUD mortgage must be cancelled or discharged

pursuant to New York Real Property and Actions Proceedings Law ("N.Y. R.P.A.P.L") § 1501(4) ("Section 1501(4)") because HUD has not commenced a foreclosure action within New York's six-year statute of limitations period. Defendant argues that this claim must be dismissed pursuant to Rule 12(b)(6) because in the Second Circuit, Section 1501(4) cannot be invoked to cancel a mortgage held by the United States or its constituent agencies.

Plaintiff's second theory is that the HUD mortgage must be found to be invalid based upon alleged flaws in the series of assignments that ultimately conveyed ownership of the mortgage to HUD. Plaintiff essentially seeks to quiet title in the Subject Property. Defendant asserts that the claim should be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks standing to argue this, as he is neither the holder of the HUD mortgage nor the holder of the note establishing the debt that is secured by the HUD mortgage. Defendant also argues that Plaintiff's quiet title claim must be dismissed pursuant to Rule 12(b)(6) because Plaintiff has failed to plausibly allege that any of the series of assignments of mortgage was invalid.

The Court now turns to the merits of the motion.

## DISCUSSION

### I. Legal Principles: Standards Applicable on Motions to Dismiss

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A defendant's challenge for lack of Article III standing, at the motion to dismiss stage, is properly raised under Rule 12(b)(1) for lack of subject matter jurisdiction. John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 735 (2d Cir. 2017) ("[W]here a complaint is dismissed for lack of Article III standing, ... [s]uch a dismissal is one

for lack of subject matter jurisdiction." (quotation omitted)); see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005). "[W]ithout jurisdiction, [a] district court lacks the power to adjudicate the merits of [a] case or dismiss a case with prejudice." John, 858 F.3d at 735 (quotations omitted). Thus, "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." Id. (quotation omitted); see also Jusino v. Fed'n of Cath. Tchrs., Inc., 54 F.4th 95, 106 (2d Cir. 2022).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113. "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].' " Tiraco v. New York State Bd. of Elections, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (citation omitted) (alterations in original); see also APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (quotation omitted)).

A Rule 12(b)(1) motion may be either facial or fact-based. Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). When the motion is facial, i.e., based solely on the allegations of the pleading including the complaint and any exhibits attached to it, the plaintiff has no evidentiary burden. Id.; see also Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d. Cir. 2011). The task of the district court is to determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." Carter, 822 F.3d at 56. Thus, while courts typically do not draw inferences in favor of the plaintiff when assessing jurisdiction, when a Rule 12(b)(1) motion is facial, the court does

"accept as true all material [factual] allegations of the complaint, and draw all reasonable inferences in favor of the plaintiff." John, 858 F.3d at 736 (quoting Carter, 822 F.3d at 56–57).

Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the pleading. See, e.g., Amidax, 671 F.3d at 145; Robinson v. Government of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001). "[I]f the affidavits submitted [by the defendant] on a 12(b)(1) motion ... reveal the existence of factual problems" in the assertion of jurisdiction, plaintiffs must present evidence controverting the alleged defects. Carter, 822 F.3d at 57. However, if the defendant's proffered evidence is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing, then a plaintiff is entitled to rely on the allegations in the pleading. Id.

"A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly bought under Fed. R. Civ. P. 12(b)(1)." SM Kids, LLC v. Google LLC, 963 F.3d 206, 210 (2d Cir. 2020). To establish Article III standing, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1618 (2020) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2206 (2021). The injury-in-fact element requires that the plaintiff be "the proper party to bring this suit." Carter, 822 F.3d at 55; Raines v. Byrd, 521 U.S. 811, 818 (1997). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute ..." Raines, 521 U.S. at 819. Any monetary loss suffered by the plaintiff satisfies this element;

"[e]ven a small financial loss" suffices. Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 85 (2d Cir. 2013).

B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

II. Failure to State a Claim

A. Section 1501(4)

Plaintiff asserts that Section 1501(4) authorizes a cause of action to cancel or discharge a lien against real property if the applicable statute of limitations to enforce that lien has expired. Under New York law, the applicable statute of limitations to foreclose upon real property is six years. N.Y. C.P.L.R. § 213(4).

Plaintiff's argument fails because it is well-established that "the United States is not bound by a statute of limitations unless Congress has explicitly expressed one." Westnau Land Corp. v. U.S. Small Bus. Admin., 1 F.3d 112, 115 (2d Cir. 1993). Congress has not imposed a

statute of limitations on foreclosure actions brought by the United States, and the New York statute of limitations does not apply to the United States. Thus, New York's six-year limitations period on foreclosure actions does not apply to actions brought by the United States or federal agencies. See id. at 116–17. Accordingly, Plaintiff's claim to cancel or discharge the mortgage pursuant to Section 1501(4) should be dismissed pursuant to Rule 12(b)(6).

## III. Plaintiff Lacks Standing

Plaintiff lacks standing: (1) to assert a quiet title claim with respect to the assignments of mortgage and (2) to challenge the debt owing to HUD, which is secured by the subject property.

### A. Quiet Title Claim

Plaintiff lacks standing to challenge the three assignments of the Mortgage held by HUD because he fails to show that any of the assignments caused any concrete or particularized harm to him.

The Mortgage was effective in securing the debt against the Subject Property. Therefore, any subsequent assignment of that security instrument to other parties does not excuse or affect the borrower's obligation to repay the debt; it merely changes the identity of the party that holds the debt. Tamir v. Bank of New York Mellon, No. 12-cv-4780, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013). A challenge of the assignments is merely litigating which party is entitled to collect the debt. The identity of the party owed a mortgage debt does not impart a cognizable injury sufficient to support standing. See Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 85 (2d Cir. 2014) (finding mortgagors bringing suit challenging ownership of their loans suffered no injury-in-fact because they could show no harm, such as being required to make duplicate payments to satisfy competing putative lenders); Pollak v. Bank of Am., No. 12-CV-7726 (VB), 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013) ("[T]he question of who

owns plaintiff's Mortgage is irrelevant for the purposes of this case, as plaintiff admits he obtained . . . loans . . . . Common sense dictates that the mere fact there may be a dispute as to which entity has legal ownership of the Mortgage does not obviate plaintiff's contractual obligation to repay the loans.") (emphasis in original); Obanya v. Select Portfolio Servicing, Inc., No. 14-cv-5255, 2015 WL 5793603, at *7 (E.D.N.Y. Sept. 30, 2015) (finding no standing to bring action to quiet title without changes to the financial obligations associated with a loan).

Assuming arguendo that Plaintiff had standing and received a favorable decision from this Court, namely to cancel the chain of assignments of the mortgage to HUD, HUD would continue to hold a debt secured against the Subject Property that it could still enforce through foreclosure. See Liu v. United States Congress, 834 F. App'x 600, 605-606 (2d Cir. 2020) (holding that a plaintiff lacks standing if requested relief would not redress the purported injury); see E.M. v. N.Y.C. Dep't of Educ., 758 F.3d 442, 450 (2d Cir. 2014) (quoting Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 75 n.20 (1978) (plaintiff must show "substantial likelihood that the relief requested will redress the injury claimed"). Challenges asserting ownership of the Note can only be asserted as a defense to a foreclosure proceeding, and not as grounds to bring a quiet title action. Tamir, 2013 WL 4522926, at *4 (characterizing a plaintiff's challenge to ownership of the mortgage as an "attempt to transform hypothetical defenses to a foreclosure action into substantive claims for relief").

HUD indorsed the Note. Accordingly, HUD may still collect the debt and foreclose upon the subject property irrespective of whether HUD also holds the corresponding mortgage or if, through cancellation of the assignments sought by Plaintiff, the mortgage were to revert back to the prior holder. Aurora Loan Servs. LLC v. Taylor, 25 N.Y. 3d 355, 361-62 (2015) (finding the validity of an assignment of mortgage irrelevant to whether a note holder has standing to

maintain a foreclosure action). The Amended Complaint fails to establish a concrete and particularized harm nor would a favorable decision in this action provide any redress, thus, this Court respectfully recommends that the Plaintiff's quiet title claim be dismissed for lack of standing.

B. Section 1501(4) Does Not Confer Standing

Plaintiff's Opposition to the instant motion contends that Section 1501(4) authorizes Plaintiff to discharge the lien upon the Subject Property because HUD cannot show that it "is a legitimate Note Holder." (Pl. Opp., DE [28], at 8-9.) Plaintiff argues that the assignments of the Note are flawed, and those flaws bar HUD from showing ownership of the Note. (Id. at 1-10; Am. Compl., p. 1-2, 6-9, 45.)

Essentially, Plaintiff argues that he has standing to pursue a quiet title claim, which would revert ownership to a prior note holder and permit Plaintiff to resurrect his Section 1501(4) claim against a private party. Plaintiff's argument fails.

Assuming, arguendo, that there are deficiencies in the assignments of the Note, such deficiencies do not negate the fact that the Subject Property is encumbered by a valid debt and enforceable lien owed to some party. If the debt were owing to a private lender, rather than HID, such that a claim to extinguish the Mortgage could, potentially, be brought pursuant to Section 1501(4), this possibility is insufficient to give Plaintiff standing to challenge HUD's ownership of the loan. A dispute as to the identity of the party to whom the debt is owed does not create a constitutionally cognizable injury. See Lujan, 504 U.S. at 561 (standing requires showing of injury-in fact and likelihood that the injury will be redressed by a favorable decision). A suit that merely challenges which entity holds the loans at issue does not assert the injury-in-fact

necessary for standing. Rajamin, 757 F.3d at 85; Pollack v. Bank of Am., No. 12-CV-7726 (VB), 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013); Obanya, 2015 WL 5793603, at *7.

Additionally, Plaintiff's use of Section 1501(4) against a private mortgagee is insufficient to establish standing in his quiet title claim against HUD because Plaintiff has not alleged, nor demonstrated any facts from which this Court could infer, that the six-year limitations period to enforce the lien has expired. See N.Y. C.P.L.R. § 213(4). The limitations period only commences once the loan has been accelerated upon a mortgagor's default. PA Asset Mgmt., LLC. v. Bank of New York Mellon, 159 N.Y.S. 3d 894, 895 (2d Dep't 2022). Events of default under a HUD HECM loan include, inter alia, the death of all borrowers, the sale of the home, or the borrowers no longer using the home as their primary residence. 12 U.S.C. § 1715z-20(j); 24 C.F.R. § 206.27(c). The Amended Complaint is devoid of any allegations pertaining to the home being sold, or the Victors no longer using the home as their primary residence. Carmel Victor died on May 15, 2021. Thus, the six-year limitations period would not expire until at least May 15, 2027. As such, Plaintiff has failed to allege any facts to infer that the six-year limitations period has expired.

Finally, because a mortgage follows the related note, any defect in the assignments would be immaterial, because HUD, as the holder of the Note, would still be entitled to collect on the debt and foreclose on the Subject Property. Aurora Loan Servs., 25 N.Y. 3d at 361-62 (finding the validity of an assignment of mortgage irrelevant to whether a note holder has standing to maintain a foreclosure action).

Accordingly, this Court respectfully recommends that Plaintiff 's Section 1501(4) be dismissed for lack of standing.

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendant‘a motion to dismiss, found at docket entry No. 27 herein, be granted.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Further, defense counsel is directed to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Plaintiff at their last known addresses and to file proof of service on ECF by August 6, 2026. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
August 3, 2026

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge